James A. LAW, individually and as Executor of the Estate of Janice C. Law and James A. Law, Plaintiff–Appellant,

v.

Walter A. CAMP, MD, Bruce L. Warwick, Frank A. Corvino, Mitchell Kline, Wei–Nchih Lee, Greenwich Hospital, Francis X. Walsh, MD, Arthur Rosenberg, James Brunetti, Consolidated–Defendants–Appellees,

Dickerman Hollister, Jr., MD, Defendant–Appellee,

Harvey Seidenstein and Kevin E. Conboy, Consolidated–Defendants.

Docket No. 00–9031.

United States Court of Appeals, Second Circuit.

July 27, 2001.

Robert H. Law, III, Armonk, NY, for appellant.

Janine M. Kelly, Ryan, Ryan Johnson & Deluca, Stamford, CT; Charles A. Deluca, on the brief, for appellee Camp.

Richard A. O'Connor, O'Brien, Tanski & Young, Hartford, CT, for appellees Warwick, Lee, Brunetti, Kline, Corvino and Greenwich Hospital.

Louis B. Blumenfeld, Cooney, Scully & Dowling, Hartford, CT; William J. Wen-

zel, Pullman & Comley, L.L.C., Bridge-port, CT, on the brief, for appellee Walsh.

Suzannah K. Nigro, Williams, Cooney & Sheehy, L.L.P., Bridgeport, CT; Ronald D. Williams, Jr., on the brief, for appellee Rosenberg.

Eric J. Stockman, Neubert, Pepe & Monteith, New Haven, CT, for appellee Hollister.

Present JACOBS, PARKER and SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment be **AFFIRMED.**

Plaintiff-appellant James A. Law (individually and as executor of the estate of Janice C. Law, his mother, and James C. Law, his father) appeals from the judgment of the United States District Court for the District of Connecticut (Nevas, J.) granting summary judgment in favor of defendants-appellees. Janice Law suffered cardiopulmonary arrest after being admitted to defendant Greenwich Hospital ("Hospital") and was later removed. from life support at the Hospital after her family's consultations with various doctors. The remaining defendants are the Hospital's corporate officers (Frank Corvino, CEO and President of the Hospital, and Bruce Warwick, Chairman of the Hospital's Board of Trustees), and doctors who were involved in some way with the treatment of Mrs. Law or her removal from life support.

Law alleged malpractice and corporate negligence in connection with Mrs. Law's death. Law separately sued defendants-appellees Camp and Hollister for fraud, claiming that Camp falsely informed him that his mother was brain dead when she was not, and that Hollister should have disclosed to him that his mother was not brain dead before Law, acting in reliance, consented to the termination of life support. The fraud and malpractice actions were subsequently consolidated in the district court.

Law moved for summary judgment in the fraud action, which was denied on the ground that there were material issues of fact as to the substance of the statements allegedly made by Camp to the Law family. Law subsequently moved for partial summary judgment in the malpractice action, arguing that the conduct of Greenwich Hospital, Corvino, Warwick, Brunetti, Kline and Lee (collectively the "Hospital Defendants"), as well as Camp and Hollister, amounted to negligence per se. The defendants cross-moved for summary judgment as to all claims. On July 26, 2000, the district court denied Law's motion for partial summary judgment and granted summary judgment in favor of the defendants as to all claims.

On appeal, Law argues chiefly that the defendants violated Connecticut statutes governing the removal of life support and deviated from the Hospital's protocol for determination of brain death, that defendants' conduct was negligence per se because the state statutes and the Hospital policy codify the applicable standard of care, and that this negligence was the proximate cause of Janice Law's death. Law makes the following additional arguments on appeal: (1) the removal of life support was a violation of the Fourteenth Amendment; (2) the district court erred in refusing to grant plaintiff Law's third motion to extend the time to disclose expert witnesses (thereby precluding Law's use of Dr. Jay B. Krasner and Dr. William S. Maxfield as expert witnesses); (3) the district court's grant of summary judgment in favor of defendants-appellees Camp and

Hollister on the fraud claims was erroneous because the court had previously denied a similar motion on the ground that there were disputed issues of material fact; and (4) material issues of fact remained as to whether the Hospital Corporate Defendants violated Connecticut Regulations regarding informed consent.

■ Assuming Law's Fourteenth Amendment claim is preserved on appeal, we conclude that it is meritless because Law has failed to offer evidence sufficient to demonstrate state action. *See Kia P. v. McIntyre*, 235 F.3d 749, 755–56 (2d Cir. 2000) (holding misdeeds of private hospital in the provision of medical care is not state action for purposes of 42 U.S.C. § 1983); *Okunieff v. Rosenberg*, 166 F.3d 507, 507 (2d Cir.1999) (per curiam) (affirming district court's holding that involuntary commitment by private hospital and physicians pursuant to state statute does not convert conduct into state action for purposes of § 1983).

■ It was not an abuse of discretion for the district court to preclude the testimony of expert witnesses who were untimely designated. *See Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir.1994) ("A district court abuses its discretion 'when the [discovery ruling] was improvident and affected the substantial rights of the parties.'" (quoting *In re Surety Ass'n of Am.*, 388 F.2d 412, 414 (2d Cir.1967))). In determining whether an abuse of discretion has occurred, this Court considers: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. and Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir.

1997); *see also Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir.1988).

Here, Law had almost four years between the date of the death (October 28, 1994) and the initial deadline for disclosure of experts (May 1, 1998). He nonetheless asked for—and was granted—two extensions by the district court, the first to October 1, 1998 and the second to December 15, 1998. Law's second motion for an extension was itself untimely filed on October 21, 1998—three weeks after the first extended deadline had expired. The district court nevertheless granted the second extension, recognizing that, under Connecticut law, expert testimony is essential to pursue a malpractice claim. Law has failed to offer an adequate explanation for failing to comply with the district court's final deadline of December 15, 1998.

Defendants would have been prejudiced by yet another extension. They would have had to brief their objections yet again and defendants had already been delayed in preparing a defense as a result of Law's failure to disclose any experts by the first two deadlines. Because the success of malpractice claims in Connecticut depends on expert testimony, the defendants could not assess the strength of their case until Law's experts were disclosed and deposed. The defendants had been preparing their case since December 15, 1998 on the reasonable assumption that Dr. Arthur Kaufman and Dr. S. Murphy Vishnubhakat were Law's only expert witnesses.

Law repeatedly ignored the deadlines set by the district court and refused to accept a fixed discovery schedule. It was not an abuse of discretion for the district court to determine that Law had sufficient time to disclose his experts and—having failed to meet the most recent court—imposed deadline—preclude him from disclosing additional expert testimony.

We affirm the district court's denial of Law's motion for partial summary judgment and grant of the defendants' motion for summary judgment on the malpractice and corporate negligence claims for substantially the reasons stated in Judge Nevas' thorough opinion. *See Law v. Camp*, 116 F.Supp.2d 295 (D.Conn.2000). As to the fraud claims, however, we affirm the grant of summary judgment in favor of defendants Camp and Hollister on the ground that Law has failed to provide expert testimony to demonstrate that Mrs. Law was not brain dead when life support was removed. *See Law*, 116 F.Supp.2d at 308. We decline to affirm on the alternative basis (cited by the district court) that Law failed to provide expert testimony "that [the] removal [of life support] was the proximate cause of Mrs. Law's death", *id.*, because we believe that the district court's formulation focuses on the wrong injury. The injury Law alleges in connection with the fraud is not Janice Law's death, but the emotional and psychological injury he himself experienced by consenting to the removal of life support under the alleged misapprehension that his mother was brain dead. Because summary judgment is supported on other grounds, it is unnecessary for this Court to consider whether Connecticut fraud law protects against this type of emotional injury or whether Law has adduced expert testimony to support a causal connection between his own injury and the alleged fraud.

For the reasons set forth above, the judgment is hereby **AFFIRMED.**