■ SEAN SHIRVANION, Appellant, v STATE OF NEW YORK, Respondent. [883 NYS2d 639]—

McCarthy, J. Appeal from a judgment of the Court of Claims (McCarthy, J.), entered May 7, 2008, upon a dismissal of the claim at the close of evidence.

Claimant commenced this action against defendant alleging that various members of the New York State Park Police and State Police used excessive force against him following a routine traffic stop from which he fled and ultimately had to be pursued and subdued. Specifically, claimant alleged that several of these

officers "without cause or provocation with great force and violence assaulted and battered [him] by striking [him] with fists, feet and batons thereby inflicting severe and permanent injuries." Following a trial, the Court of Claims dismissed the claim finding that the involved officers used reasonable force under the circumstances and further rejecting claimant's contention that defendant owed a special duty to him. Claimant appeals, and we now affirm.

Defendant may be held liable for injuries where an officer in its employ uses excessive force in effectuating an arrest (*see Jones v State of New York*, 33 NY2d 275, 279-280 [1973]; *Arnold v State of New York*, 108 AD2d 1021, 1022 [1985], *appeal dismissed* 65 NY2d 723 [1985]; *Stein v State of New York*, 53 AD2d 988 [1976]), with such claim "analyzed under the 4th Amendment [of the US Constitution] and its standard of objective reasonableness" (*Passino v State of New York*, 260 AD2d 915, 916 [1999], *lv denied* 93 NY2d 814 [1999]; *see Graham v Connor*, 490 US 386, 395 [1989]). Moreover, "[w]hile it is well settled that this Court has the authority to independently consider the weight of the evidence on an appeal in a nonjury case, deference is still accorded to the findings of the Court of Claims where, as here, they are based largely on credibility determinations" (*Bush v State of New York*, 57 AD3d 1066, 1066 [2008]; *see Burton v State of New York*, 283 AD2d 875, 877 [2001]; *Lewis v State of New York*, 223 AD2d 800, 801 [1996]). Upon our independent review of the record and giving due deference to the Court of Claims' assessment of witness credibility, the evidence fully supports dismissal of the claim on the ground that claimant failed to prove that any officer used excessive force in subduing him after he led them on a high-speed chase and then resisted arrest (*see Wester v State of New York*, 247 AD2d 468 [1998]; *see also Lewis v State of New York*, 223 AD2d at 801; *Arnold v State of New York*, 108 AD2d at 1023).

Notably, claimant did not dispute at trial that he was pulled over for a routine traffic stop by Park Police Sergeant John Perez on the afternoon of October 13, 2003 for failing to display a front license plate or that he abruptly sped away during questioning (nearly hitting Perez in the process). Nor did claimant dispute that he fled from a pursuing park police cruiser (which had its emergency lights and siren activated) at a high rate of speed and that he refused repeated directives to pull over. In fact, claimant did not dispute most of the details supplied by six officers involved in this incident who established, in sum and substance, that five law enforcement vehicles were engaged in an effort to stop claimant's fleeing vehicle during

the course of which claimant drove erratically and recklessly on public roadways, refused to pull over, struck and damaged vehicles and roadside objects and caused serious injury to State Police Sergeant John Hopsicker, who was forced to jump inside claimant's vehicle to avoid being crushed shortly before the vehicle violently crashed into an earthen embankment. Claimant also did not dispute testimony that he remained combative and noncompliant when officers were attempting to place him under arrest after this crash requiring various defensive measures on their part, including the use of pepper spray and the striking of a baton on his arm.*

Rather, claimant's case against defendant consisted primarily of evidence that he suffers from diabetes and that he was in a state of "hypoglycemia unawareness" throughout most of this incident. According to claimant, although he does not remember speeding away from Perez or most of the other events that followed, he does remember telling Perez that he was having "a diabetes shock" and needed medical assistance. Perez steadfastly denied that claimant informed him that he was suffering from a medical condition at the initial stop or that he asked for medical help. Rather, according to Perez, "[e]verything appeared normal." On this critical credibility dispute, the Court of Claims credited Perez, finding his testimony "both credible and unequivocal."

Given claimant's persistent efforts to evade the officers by engaging in a high-speed chase during which he drove erratically and recklessly on public roads, which clearly posed a threat to the safety of those officers and others, and given his continued refusal to cooperate and his belligerence as officers attempted to restrain him after his vehicle finally came to a stop, the Court of Claims' conclusion that the officers did not use excessive force against him is supported by a fair interpretation of the evidence (*see generally Thoreson v Penthouse Intl.*, 80 NY2d 490, 495 [1992]). Finally, claimant wholly failed to demonstrate the elements of a special relationship given the court's rejection of his testimony that he actually requested medical assistance from Perez and, in any event, given the utter lack of evidence that claimant, who fled from Perez, justifiably relied on any alleged promise by Perez to render such assistance (*see e.g. Boland v State of New York*, 218 AD2d 235, 241 [1996]).

Peters, J.P., Spain, Lahtinen and Kavanagh, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

* To be sure, at various times during this escalating incident, one or more of the involved officers had his gun drawn.